# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ANTONIO RUFFIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CAUSE NO.: 2:00-CR-75-TS |
| v. | ) | 1:06-CV-241-TS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

In October 2005, Petitioner Antonio Ruffin entered into a plea agreement with Respondent United States of America and pleaded guilty to one count of intentionally distributing crack cocaine and aiding and abetting. This Court sentenced Petitioner to eighty-seven months of imprisonment and later reduced his sentence to seventy months because of the amended crack cocaine sentencing guidelines.

Petitioner moved to vacate his sentence under 28 U.S.C. § 2255 and raised several claims to support his motion. This Court in its October 12, 2006, Opinion and Order [DE 41] dismissed all but one of Petitioner's claims and ordered that an evidentiary hearing be held regarding Petitioner's remaining claim—that his attorney, Kevin Milner, provided ineffective assistance of counsel by failing to file a notice of appeal. Having held the evidentiary hearing, the Court concludes that Petitioner's ineffective assistance of counsel claim fails and, therefore, denies Petitioner's motion.

## A. Factual and Procedural Background

On May 19, 2000, a federal grand jury sitting in Hammond, Indiana, returned an indictment, charging the Petitioner with four counts of distributing more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The case remained pending for five years, until Petitioner was located and arrested on August 12, 2005. On October 21, 2005, the Government and Petitioner entered into a plea agreement in which Petitioner agreed to plead guilty to Count 4 of the indictment, charging him with distributing more than five grams of crack cocaine on January 26, 1999. In exchange for his guilty plea, the government agreed to dismiss the remaining counts against Petitioner. The Government also recommended a sentence equal to the minimum of the applicable guideline range. However, the plea agreement explicitly stated that the parties did not agree whether Petitioner's sentence should be enhanced under the "dangerous weapon" provision of § 2D1.1(b)(1) of the United States Sentencing Guidelines. (Plea Agreement ¶ 7d.iv., DE 23) In the agreement, Petitioner waived his right to appeal his conviction and sentence:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offenses as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any postconviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255;

(Plea Agreement ¶ 7e.) Later that day, Petitioner pleaded guilty to Count 4 of the indictment, during a hearing before Magistrate Judge Andrew P. Rodovich.

This Court sentenced Petitioner on January 20, 2006, to eighty-seven months of imprisonment, followed by four years of supervised release.[1] During the sentencing hearing, the Court accepted the Government's position that Petitioner's sentence should be enhanced by two points, pursuant to § 2D1.1(b)(1) of the sentencing guidelines, because the police recovered a handgun, matching magazine, and seventeen rounds of ammunition in the basement of the home where Petitioner lived and sold the crack cocaine.

Petitioner filed a § 2255 Habeas Corpus Petition [DE 35] on June 27, 2006, raising four claims. He insisted that his former attorney, Kevin Milner, provided constitutionally insufficient assistance by: (1) failing to force the government to prove beyond a reasonable doubt the "924(c)" "enhancement" of his sentence; (2) failing to force the government to satisfy the proof requirements for a charge under 18 U.S.C. § 924(c); (3) failing to advise him of the possibility of a sentencing enhancement and the resulting minimum and maximum penalties that applied to him; and (4) failing to file either an appeal or a notice of an appeal when instructed to do so.

On October 12, 2006, this Court dismissed Petitioner's first three claims but concluded that an evidentiary hearing was needed to determine whether Petitioner's attorney ignored a request to appeal to the Seventh Circuit, and thus, provided ineffective assistance of counsel. The Court appointed counsel to represent Petitioner in the § 2255 proceedings.

---

[1] This Court entered judgment on January 23, 2006. On May 13, 2008, this Court issued an order reducing Petitioner's previously imposed sentence of eighty-seven months of imprisonment to seventy months due to the amended crack cocaine sentencing guidelines. (*See* Order, DE 62.)

## B. The Evidentiary Hearing

This Court held an evidentiary hearing on May 7, 2007, and heard testimony from Petitioner, Petitioner's brother (Lawrence Ruffin), and Kevin Milner.

Petitioner testified that at his sentencing he told the Court that he did not want to appeal. After the sentencing, however, Petitioner was uncertain about whether he could appeal the dangerous weapon enhancement. Petitioner admits that he never personally spoke with Milner after the sentencing about pursuing an appeal. Rather, Petitioner instructed his brother to contact Milner, to ask whether Petitioner could appeal, and if so, to direct Milner to file an appeal. According to Petitioner, his brother could not reach Milner, so Lawrence left messages stating that Petitioner wanted to appeal. Petitioner contends that Milner never responded.

At the evidentiary hearing, Lawrence Ruffin gave a slightly different account of the attempt to communicate with Milner. According to Lawrence, he became a "middleman" for communications between Petitioner and Milner. After the sentencing, Petitioner and Lawrence discussed whether Petitioner could appeal. Lawrence testified that Petitioner told him to contact Milner to discuss whether he "could appeal based on his plea agreement." (Evidentiary Hr'g Tr. 39.)

Thus, at his brother's request, Lawrence attempted to contact Milner about three or four weeks after the sentencing. (*Id.* at 50.) Yet, when he called Milner's cell phone, Milner never answered. At the hearing, Lawrence didn't recall leaving a message on his voicemail. As he put it, "I'm not the person that leave messages like that . . . once he see my name on the caller ID, he needs to respond back." (*Id.* at 39.) Milner never responded. Lawrence contends that, at some point when he was trying to contact Milner, Milner changed his cell phone number. Although

4

Lawrence had Milner's business card, he never attempted to call him at his office. Nor did he go to Milner's office to speak with him. Indeed, Lawrence acknowledges that he never spoke to Milner. (*Id.* at 48.)

At the hearing, Milner testified that when Petitioner changed his plea, Petitioner "had no interest whatsoever in [an] appeal." (*Id.* at 60.) Milner stated that he explained the plea agreement and its appeal waiver to Petitioner, who indicated that he completely understood its consequences. Milner also testified that after the sentencing he determined that there were no non-frivolous issues to appeal and discussed his determination with Petitioner. Although he referred him to a previous conversation about appeals, Milner never instructed Petitioner after the sentencing about the advantages and disadvantages of pursuing an appeal. In his opinion, "[t]here wasn't going to be a plea negotiation that was going to be more favorable to him" and "there would be nothing to gain from an appeal." (*Id.* at 65.)

According to Milner, neither Petitioner nor anyone on his behalf instructed him to file an appeal or communicated Petitioner's interest in an appeal. Moreover, Milner claimed that after the sentencing he never received voicemail messages or caller ID traces from Petitioner or anyone on Petitioner's behalf. Milner also testified that he never changed his cell phone number.

**C.     Discussion**

**1.      Standard for Ineffective Assistance of Counsel Claim**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective assistance" of counsel. *Id.* at 687. To prove a claim for ineffective assistance of counsel, a defendant must show

that (1) counsel's representation was not objectively reasonable and (2) that the representation was prejudicial to the defendant. *Id.* at 688, 694. A court's scrutiny of the representation will be highly deferential to counsel. *Id.* at 689.

In the context of an attorney's failure to file a notice of appeal, the *Strickland* analysis requires a court to make four inquiries. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). First, a court must consider whether counsel ignored the client's request to file a notice of appeal. If so, both prongs of the *Strickland* test are satisfied because a lawyer's failure to file a requested notice of appeal is professionally unreasonable and a client's instruction to appeal indicates an intent to appeal that satisfies the prejudice requirement. *See id.* at 477, 485; *see also Quintero v. United States*, 316 F. Supp. 2d 711, 719 (N.D. Ind. 2004). However, a client who tells counsel not to file an appeal cannot later claim that counsel performed deficiently by failing to appeal. *Id.*

Second, if the client did not give counsel a directive about making an appeal, then a court must inquire whether the attorney advised the client about "the advantages and disadvantages of taking an appeal and made a reasonable effort to discover the [client's] wishes." *Flores-Ortega*, 528 U.S. at 478. If counsel consulted with the client about an appeal, then counsel's performance is deficient only if counsel failed to follow the client's instructions regarding an appeal. *Id.*

Third, if counsel did not consult with the client about an appeal, then a court must inquire whether counsel had a duty to talk to the client about a possible appeal. *Id.* An attorney has a duty to consult with the client about an appeal if there is reason to think that either a rational defendant would want to appeal or that the client reasonably indicated to counsel that he or she was interested in appealing. *Id.* at 480. In making this determination, a court must consider "all the information counsel knew or should have known." *Id.* at 481. Moreover, a court will consider

6

the following factors: (1) whether the conviction followed a trial or guilty plea; (2) whether the defendant received the sentence bargained for in the plea; and (3) whether the plea expressly reserved or waived some or all rights to appeal. *Id.*

Fourth, if counsel had a duty but failed to advise the client about a possible appeal, a court must determine whether the defendant has demonstrated a reasonable probability that he or she would have timely appealed, but for the attorney's deficient failure to consult. *Id.* at 484. A defendant may demonstrate this with evidence of non-frivolous grounds for appeal or that he or she promptly expressed a desire to appeal. *Id.* at 485.

2.  **Analysis**

The first step of the Court's analysis is to determine whether Attorney Milner ignored an instruction from Petitioner to appeal. Milner testified and Petitioner admits that he never instructed Milner to appeal. Lawrence Ruffin testified that he too did not speak with Milner about an appeal. He also did not remember leaving a voicemail message instructing Milner to appeal—as he put it, he wasn't the type of person to leave messages. Additionally, there is no evidence that Petitioner instructed Milner not to appeal. Therefore, the Court concludes that Milner did not ignore a directive to appeal and, thus, moves to the next step of the analysis.

The next question is whether Milner consulted with Petitioner about the advantages and disadvantages of appealing and whether he made a reasonable effort to discover Petitioner's wishes. Although Milner testified that he referred Petitioner to a previous conversation about appeals, he claims that after the sentencing he never instructed Petitioner about the advantages and disadvantages of pursuing an appeal. Because Milner did not consult with the Petitioner

7

about an appeal, it cannot be the case that he acted in a professionally unreasonable manner by failing to follow any instructions to appeal during a non-existent conversation. Thus, the Court moves to the next step of the analysis.

The next inquiry is whether Milner had a duty to consult with Petitioner about a possible appeal. More specifically, the Court must determine whether a rational defendant in Petitioner's position would want to appeal and whether Petitioner reasonably indicated to Milner that he was interested in appealing. *Id.* at 480.

The Court concludes that a rational defendant in Petitioner's position would not want to appeal. Petitioner pleaded guilty after entering into a plea agreement with the Government. In the plea agreement, Petitioner waived almost all of his appellate rights. In exchange, three counts of the four-count indictment were dismissed. A reasonable defendant in Petitioner's position would welcome such an agreement. Petitioner's decision to enter into the plea agreement and waive the majority of his appellate rights indicates that he may have been seeking an end to the judicial proceedings.

In addition, Petitioner received the sentence that he bargained for in his plea agreement. The Government recommended a sentence equal to the minimum of the applicable guideline range. Although his potential term of imprisonment ranged from five to forty years, Petitioner was sentenced to only seven years and three months of imprisonment (later reduced to seventy months). This sentence reflects a two-point dangerous weapon enhancement, which, as Petitioner acknowledged in his plea agreement, the Government and he did not agree upon.

The Court also concludes that Petitioner did not reasonably indicate to Milner that he was interested in appealing. At sentencing, Petitioner told the Court that he did not want to appeal.

8

And, as previously discussed, both Petitioner and his brother admit not speaking to Milner about pursuing an appeal.

Therefore, the Court concludes that Milner did not have a duty to talk to Petitioner about a possible appeal. On this basis, Petitioner's claim fails because Milner's representation was objectively reasonable.

Even if the Court were to conclude that Milner's representation was deficient, Petitioner could not demonstrate a reasonable probability that he would have timely appealed. *Flores-Ortega*, 528 U.S. at 484 (holding that a defendant must show prejudice by demonstrating a reasonable probability that he or she would have timely appealed). This is so because the Petitioner cannot show that he would have filed a notice of appeal within ten days of the entry of final judgment. *See* Fed. R. App. P. 4(b)(1)(A). This Court entered judgment three days after sentencing, but Lawrence Ruffin testified that he did not attempt to contact Milner about an appeal until three or four weeks after the sentencing.

**D. Conclusion**

Therefore, the Court denies Petitioner's § 2255 Motion to Vacate [DE 35].

SO ORDERED on July 27, 2009.

   s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT